IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARY WREEDE,**                                   Case No. 3:18 CV 164

     Plaintiff,                                   Judge James G. Carr

     v.                                           Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

     Defendant.                                   REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Mary Wreede ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated January 22, 2018). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in March 2014, alleging a disability onset date of October 1, 2013. (Tr. 225-44). Her claims were denied initially (Tr. 81-82, 107-11, 116-19) and upon reconsideration (Tr. 83-84, 127-31, 132-36). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 139). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on October 4, 2016. (Tr. 31-58). On January 25, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 11-24). The Appeals

Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on January 22, 2018. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background and Testimony

Born in 1963, Plaintiff was 50 years old at her alleged onset date. *See* Tr. 243. She alleged disability due to hip pain, bilateral hip impairments, and other orthopedic disorders. (Tr. 259). Plaintiff had a high school education (Tr. 38) and past work as a production assembler, a vending machine attendant, and a packer (Tr. 51-52). At the time of the hearing, she lived with a friend. (Tr. 37). Plaintiff had a driver's license; she drove to the grocery store (once every two weeks) and to doctor appointments. *Id.*

Plaintiff had both hips replaced in 2014. (Tr. 41-42). Despite this, she had continued difficulty bending, and problems sleeping on her right side due to pain. (Tr. 42). She could not walk for longer than five minutes before her back began to hurt. *Id.* She had a cane to use when needed ("if my back really bothers me"), but only used it about once per month. (Tr. 49). Plaintiff estimated she could stand in one place for thirty minutes if she could lean on a table. (Tr. 43-44). She estimated she could lift five to six pounds. (Tr. 44).

Plaintiff's wrist and hand pain improved following carpal tunnel release procedures in May 2016. (Tr. 45). Prior to that, she had difficulty with numbness and dropping things. *Id.* She was left handed, and did not have any problems with her left hand at the time of the hearing. (Tr. 37). She had a "little" soreness with her right hand, but could still use it. (Tr. 43).

Plaintiff spent approximately three days per month in bed because of pain. (Tr. 46). Cold weather made her back and hip pain worse. (Tr. 47). Her medication caused side effects. *Id.* ("I

feel really loopy. I just feel dizzy. I don't like taking them."). Plaintiff received cortisone shots for her back pain and took pain medication. (Tr. 42). Plaintiff estimated she spent six out of eight hours per day lying down; she took two 30 to 45 minute naps each day. (Tr. 47).

<u>Relevant Medical Evidence</u>

Plaintiff established care with Thomas Lautzenheiser, M.D., in October 2013. (Tr. 472). Plaintiff reported middle lower back pain radiating down her back, which increased with bending and spreading her legs. *Id.* On examination, Plaintiff had a normal gait, and mild tenderness, spasm, and rigidity in her lumbosacral spine. (Tr. 473-74). Dr. Lautzenheiser ordered x-rays, prescribed medication, and instructed Plaintiff to "[d]o the back exercises we discussed." (Tr. 474). The x-ray was normal. (Tr. 448). In a return visit later that month, Dr. Lautzenheiser noted Plaintiff demonstrated pain with abduction of the hip; he ordered x-rays. (Tr. 476). The x-rays showed advanced degenerative osteoarthritis in Plaintiff's left hip, and moderately severe degenerative arthritis her right hip. (Tr. 444-46).

In November 2013, Plaintiff saw orthopedist Gary Schniegenberg, M.D. (Tr. 321). Plaintiff reported problems with her hips for the prior three to four years, including limited motion, problems climbing stairs, morning stiffness, and her hip giving out. *Id.* On examination, Dr. Schniegenberg noted some problems with gait, including limping more on the left than the right; he also noted a positive log roll, and stiffness with flexion, abduction, and external rotation. *Id.* Plaintiff also had some muscular weakness in her quadriceps and hamstrings (4+/5). *Id.* Dr. Schniegenberg recommended a left total hip replacement, and anticipated a right total hip replacement would follow. (Tr. 322).

Plaintiff returned to Dr. Lautzenheiser in February 2014, reporting continued hip pain and requesting "something to ease the pain until she can get insurance to get hip replacement." (Tr.

3

478). Plaintiff's gait and posture were normal. *Id.* Dr. Lautzenheiser prescribed medication and a handicap parking placard; he instructed Plaintiff to follow up with the orthopedist after obtaining insurance. (Tr. 480).

Plaintiff next saw Dr. Schniegenberg in March 2014. (Tr. 470-71). On examination, she had limited motion, difficulty getting on and off the examination table, "a little bit of an antalgic gait", positive log roll test, and stiffness with flexion, abduction, and external rotation. (Tr. 470). Dr. Schniegenberg noted Plaintiff needed a hip replacement. (Tr. 471). X-rays taken the following month noted severe bilateral hip osteoarthritis, left worse than right. (Tr. 662-65).

At visits in March and April 2014 for unrelated issues, Dr. Lautzenheiser and other providers in his office noted Plaintiff had normal gait and posture. (Tr. 483, 486, 489). On examination at a visit in April 2014, Dr. Lautzenheiser noted Plaintiff had "painful abduction and adduction of the hips bilaterally"; however, she had a normal gait and "walk[ed] [without] assistance or the use of a cane". (Tr. 493-94).

Plaintiff underwent a left hip replacement with Dr. Schniegenberg in May 2014. (Tr. 377-79). At her first post-operative visit, Dr. Schniegenberg noted Plaintiff was doing "very well", not taking any pain medication, and "ambulating well with her walker." (Tr. 465). In early June 2014, Plaintiff saw a provider in Dr. Lautzenheiser's office who observed a normal gait and posture. (Tr. 498). At her six week post-op visit, Plaintiff was "doing extremely well"; she "came in without a walker or crutches", was "already driving", was able to cross her legs at the ankle, and was "ambulating well". (Tr. 463).

In July 2014, Plaintiff underwent a consultative examination with Babatunde Onamusi, M.D. (Tr. 450-57). Plaintiff reported low back pain coming from her hips that was constant and severe "with any level of weight bearing or activity within the house". (Tr. 454). On examination,

Dr. Onamusi noted Plaintiff walked with a mild limp, and had mild difficulty getting onto and off the examination table; she did not require an assistive device for ambulation. (Tr. 455). "Most of the range of motion [testing] in the hips was deferred due to recent surgery on the left hip and pain in the right hip." *Id.* Plaintiff had moderate tenderness in the sacral region of her spine, and decreased range of motion in the back. (Tr. 452, 456).

At her three month post-op visit in August 2014, Dr. Schniegenberg again noted Plaintiff had done "extremely well" and was "ambulating well without any ambulatory aid"; she had "no pain and no discomfort". (Tr. 461). Dr. Lautzenheiser saw Plaintiff that same month for knee pain following a fall six weeks prior. (Tr. 816). In September and October 2014 visits to Dr. Lautzenheiser's office, Plaintiff had normal gait and posture. (Tr. 506, 710). In September, she also had normal strength and tone in both lower extremities. (Tr. 507).

Plaintiff underwent a right hip replacement with Dr. Schniegenberg in October 2014. (Tr. 785-86). The following week, Plaintiff had an initial physical therapy evaluation with Natalie Koester, PT, DPT. (Tr. 969). Plaintiff reported 5/10 right hip pain, had a cane and a rolling walker, and expressed a goal of "get[ing] back to walking". *Id.* On examination, Plaintiff had slight right upper thigh edema, decreased lower extremity strength (right leg 4/5 and left hip 4+/5), tenderness to palpation at the right hip incision, and decreased quadriceps tone on the right versus the left. *Id.* She also ambulated with a "slight antalgic gait" with "decreased stance and step on right". *Id.* Ms. Koester recommended six weeks of physical therapy twice per week, and assessed Plaintiff's rehabilitation potential as "good". *Id.*

At her two week post-op visit with Dr. Schniegenberg in November 2014, Plaintiff was "doing extremely well", reporting she was "doing better than she did the last time." (Tr. 770). Plaintiff was "ambulating well", had a cane, and had no pain (without pain medication). *Id.*

Plaintiff underwent six more physical therapy sessions through December 9, 2014. (Tr. 973-76). A physical therapy discharge form indicates Plaintiff was discharged because she "cancelled last/remaining appointment(s) and did not reschedule". (Tr. 977).

Plaintiff returned to Dr. Schniegenberg in December 2014, reporting problems with sciatica and her low back. (Tr. 768). Dr. Schniegenberg prescribed Norco for pain, and instructed Plaintiff to continue physical therapy. *Id.*

In January 2015, Dr. Schniegenberg noted Plaintiff's right hip replacement was "looking extremely well"; her main complaint was back pain. (Tr. 766). Dr. Schniegenberg noted Plaintiff had a leg length issue and gave her a shoe lift. *Id.* He prescribed exercises and a "Warm 'N Form" for back strain; she was to return in three months for her back and nine months for her hip. *Id.*

Later that month, Plaintiff underwent an initial physical therapy evaluation with Ms. Koester for back pain. (Tr. 981). Plaintiff reported mid to low back pain with occasional sciatica down her right leg; the pain was worse with bending, standing, or walking too long (more than 20-30 minutes). *Id.* Plaintiff had reduced lumbar range of motion, and reduced strength (bilateral hips 4/5; knees 4+/5; ankles 4+/5); she had tenderness to palpation and tightness across her low back and into her bilateral piriformis muscle/buttocks. *Id.* She ambulated with a "slight trendelenberg gait and slight antalgic gait". *Id.* Ms. Koester recommended a four week course of physical therapy once per week with a goal of decreasing pain. (Tr. 983). Plaintiff had three more physical therapy sessions (two in February, one in April). (Tr. 985-87). A note after the April session indicated Plaintiff was discharged from therapy because her "goals [were] mostly met". (Tr. 988).

At her six month post-op visit for her right knee in April 2015, Dr. Schniegenberg noted Plaintiff's hip was "doing fine" and she was "moving well", but was "consistently having problems with back discomfort." (Tr. 764). Plaintiff's pain radiated to her right buttock, but did not radiate

6

down the leg; her gait was "good". *Id.* Dr. Schniegenberg prescribed Ultram for pain relief and ordered a back MRI. *Id.* The MRI was normal. (Tr. 991-92).

Plaintiff returned to physical therapy, this time with Eric Schaffner, DPT, in May 2015. (Tr. 995). Plaintiff reported low back pain for "several years", which had not decreased after hip replacements. *Id.* On examination, Mr. Schaffner noted decreased lumbar lordosis, range of motion, lower extremity strength (4+/5), trunk rotation with gait, and hamstring flexibility; Plaintiff had positive straight leg raising tests, was unable to complete a Faber test due to hip range of motion deficits, and had prone instability in her lower lumbar spine. *Id.* Plaintiff had eleven more physical therapy visits; the last one was July 15, 2015. (Tr. 1002-07). Her discharge report stated Plaintiff had "improved as expected" with pain decreasing from 6/10 to 3/10, and her active lumbar range of motion improved to within normal limits without increased pain. (Tr. 1008).

In June 2015, Dr. Schniegenberg noted a spine MRI showed "a little bit of disc changes, a little bulge, but nothing that impinges or causes changes within the spina[l] canal"; he assessed a lumbar strain. (Tr. 760). He recommended a back brace, conditioning and strengthening, and thought Plaintiff should be able to return to full activities without any intervention. *Id.*

At visits from June to October 2015, Dr. Lautzenheiser, or certified nurse practitioners in his practice, noted Plaintiff's normal gait and posture. (Tr. 805[1], 809, 836, 839, 849).

In September 2015, Plaintiff told Dr. Schniegenberg that she had continued back pain despite physical therapy exercises helping some. (Tr. 758). He assessed degeneration lumbar intervertebral disk, and back pain, and prescribed an epidural injection at L5-5 and S1. *Id.*

In February 2016, Plaintiff returned to Dr. Schniegenberg's office to discuss possible carpal tunnel syndrome; she saw Christa Guggenbiller, MPAS, MS, PA-C, AT. (Tr. 756). Plaintiff

---

1. This record is duplicated at Tr. 845.

reported bilateral hand numbness for "at least 10 years", with the left hand worse than the right. *Id.* Plaintiff had trouble with fine motor movement and picking up small items; she dropped things, and her hands fell asleep when driving. *Id.* A wrist brace had not helped in the past. *Id.* On examination, Plaintiff had good range of motion in her wrists, elbows, and shoulders; Tinel's sign was negative bilaterally in the wrists. *Id.* Plaintiff had a positive Phalen's sign with the middle finger experiencing numbness in the left hand. *Id.* Ms. Guggenbiller sent Plaintiff for an electromyography / nerve conduction test ("EMG / NCS"). (Tr. 757). The EMG showed mild bilateral carpal tunnel syndrome. (Tr. 754).

In May 2016, Dr. Schniegenberg performed a left carpal tunnel release. (Tr. 915-16). At her two week follow up appointment, Plaintiff reported the numbness and tingling improved "by about 80 percent." (Tr. 895). Ms. Guggenbiller noted Plaintiff had "done extremely well"; she had returning sensation, and good range of motion of the left wrist, elbow, and shoulder. *Id.* Later that month, Dr. Schniegenberg performed a right carpal tunnel release. (Tr. 1080).

Plaintiff returned to Dr. Lautzenheiser in June 2016, reporting bilateral sciatic leg pain and a bump on her left knee. (Tr. 1088). On examination, Plaintiff had mild tenderness her lumbosacral spine, spasm and rigidity; the pain referred to Plaintiff's lower back. (Tr. 1089). Plaintiff's gait and posture were normal. *Id.*

Plaintiff underwent another physical therapy evaluation in June 2016 with Adam Bowden, PT. (Tr. 1107-09). She reported lower back pain with bilateral buttock pain, which she had experienced in the past, but recent onset of symptoms was one to one-and-a-half months prior. (Tr. 1107). The pain was worse in the morning, as well as with bending, prolonged walking, sitting on hard surfaces, and standing; it was better with medications, side-lying, heat use, and sitting. *Id.* Plaintiff reported functional limitations in "recreational walking" and "some housekeeping tasks".

*Id.* On examination, Plaintiff had some tenderness to palpation in her back and decreased hip strength (4+/5); Plaintiff also reported some soreness in the anterior hips with hip flexion. *Id.*

Later that month, on examination of Plaintiff's hips, Dr. Lautzenheiser found no tenderness to palpation, pain, swelling or edema; there was normal range of motion, no crepitus, no instability, subluxation or laxity, no known fractural or dislocations, and normal sensation and coordination. (Tr. 1086). Plaintiff's gait was normal. *Id.* Plaintiff had 5/5 strength in her wrist extensors and flexors, and 4+ reflexes in the wrists and elbows. *Id.* She also had pain in her cervical spine and lumbosacral spine. *Id.* Mr. Bowden recommended six weeks of twice-per-week physical therapy. (Tr. 1108). Plaintiff's discharge summary from one month later noted she reported "at least 50-60% improvement in pain since onset of [physical therapy]"; Plaintiff requested discharge because she was doing well with reduced pain. (Tr. 1105).

In July 2016, Plaintiff again had normal gait on examination with a nurse practitioner in Dr. Lautzenheiser's practice. (Tr. 1082).

*Opinion Evidence*

In April 2014, Dr. Lautzenheiser completed a Multiple Impairment Questionnaire. (Tr. 326-32). He noted he had treated Plaintiff since October 2013, and diagnosed severe osteoarthritis of both hips. (Tr. 326). She had pain with abduction and adduction of the hips, as well as with ambulation; she was scheduled to have both hips replaced. *Id.* Weight bearing and extended sitting were identified as aggravating pain factors. (Tr. 328). Dr. Lautzenheiser opined Plaintiff could sit for four hours in an eight-hour workday and stand or walk for two hours; she could not sit or stand/walk continuously, and must get up and move around every hour for fifteen minutes. (Tr. 328-29). Plaintiff could frequently lift ten pounds or less, and occasionally twenty pounds; she could occasionally carry up to twenty pounds. (Tr. 329). Dr. Lautzenheiser opined Plaintiff did not

have significant reaching or manipulative limitations. *Id.* He opined Plaintiff's pain, fatigue, or other symptoms were severe enough to frequently interfere with attention and concentration; she would also need unscheduled breaks to rest approximately every hour for "10-15 minutes presently". (Tr. 331). He estimated she would be absent from work more than three times per month. (Tr. 332). Plaintiff could not kneel, bend, or stoop on a sustained basis. *Id.*

In July 2014, consultative examiner Dr. Onamusi opined Plaintiff could perform sedentary work. (Tr. 456).

Also in July 2014, state agency physician Bradley Lewis, M.D., reviewed Plaintiff's records. (Tr. 66-67). He opined Plaintiff could lift or carry twenty pounds frequently and ten pounds occasionally; she could stand, walk, or sit for about six hours in an eight-hour workday. (Tr. 66). She could frequently climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds, crouch, or crawl. *Id.* In October 2014, state agency physician Michael Delphia, M.D., reviewed Plaintiff's medical records and affirmed Dr. Lewis's opinion (Tr. 91-92).

In June 2016, Dr. Lautzenheiser completed a Disability Impairment Questionnaire. (Tr. 923-27). He listed diagnoses of low back pain, bilateral hip pain, and bilateral wrist pain. (Tr. 923). As the findings in support of these diagnoses, he listed: "previous bilateral hip replacement[,] previous bilateral carpal tunnel surgery[,] and] [s]ubjective complaints of low back pain." *Id.* He opined Plaintiff could perform a job in the seated position for three hours per day; she could also perform a job standing or walking for three hours per day. (Tr. 925). He checked a box indicating Plaintiff needed to avoid continuous sitting; she would need to get up from a seated position every hour for fifteen to thirty minutes before sitting again. *Id.* Plaintiff could frequently lift or carry up to ten pounds, occasionally twenty. *Id.* She had no significant limitations in reaching, handling, or fingering. (Tr. 926). He noted Plaintiff could not walk extended distances or sit for prolonged

10

periods of time, and her pain, fatigue or other symptoms would frequently interfere with her attention and concentration. *Id.* She would also need unscheduled rest breaks approximately every hour for fifteen to thirty minutes. *Id.* He opined Plaintiff would be absent from work two to three time per month. (Tr. 927).

VE Testimony

The ALJ asked the VE to consider an individual of Plaintiff's age, education, work experience, and RFC as ultimately determined by the ALJ. (Tr. 52-54). The VE testified such an individual could do her past work as a production assembler or vending machine attendant, as well as other jobs such as cleaner, mail clerk, and inspector. (Tr. 54).

ALJ Decision

In his written decision dated January 25, 2017, the ALJ found Plaintiff met the insured status requirements for DIB through December 30, 2018, and had not engaged in substantial gainful activity since her October 1, 2013 alleged onset date. (Tr. 13). The ALJ found Plaintiff had severe impairments of osteoarthritis, left hip, with left hip replacement; osteoarthritis, right hip, with right hip replacement; and carpal tunnel, bilateral, *id.*; but these severe impairments did not meet a listed impairment individually or in combination (Tr. 15). The ALJ then found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations:

> occasionally climbing ramps and stairs; occasionally climbing ladders, ropes, or scaffolds, frequently balancing and stooping; occasionally kneeling, crouching, and crawling . . . . [and] manipulative limitations: handling and fingering frequently bilaterally.

(Tr. 15). Based on the VE testimony, the ALJ concluded Plaintiff could perform past relevant work as a production assembler and vending machine attendant, as well as other jobs such as cleaner,

mail clerk, and inspector. (Tr. 21-23). Thus, the ALJ found Plaintiff not disabled from her alleged onset date through the date of the ALJ's decision. (Tr. 24).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

12

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff contends the ALJ erred in his evaluation of: 1) the medical opinion evidence, and 2) Plaintiff's testimony. The Commissioner responds that the ALJ did not err in either regard, and his decision should be affirmed. Further, in a supplemental letter filed after her Reply brief, Plaintiff contends remand is required based on the Supreme Court's recent decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). (Doc. 12). The Commissioner filed a response. (Doc. 13). For the

reasons discussed below, the undersigned recommends the decision of the Commissioner be affirmed.

<u>Medical Opinion Evidence</u>

Plaintiff first contends the ALJ erred in his evaluation of the medical opinion evidence. Specifically, she argues the ALJ should have afforded controlling weight to the opinions of treating physician Dr. Lautzenheiser, erred in his consideration of consultative physician Dr. Onamusi, and erred in giving greater (though still "partial") weight to non-examining state agency medical consultants who did not review a full record. The Commissioner responds that the ALJ properly evaluated the medical opinion evidence, and his decision is supported by substantial evidence. In Reply, Plaintiff contends the ALJ played doctor, ignored evidence contrary to his conclusions, and failed to cite specific medical facts to support the RFC. For the reasons discussed below, the undersigned finds no error in the ALJ's evaluation of the opinion evidence.

*Treating Physician Dr. Lautzenheiser's Opinions*

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188.[2] A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support

---

2. Although recent revisions to the CFR have changed the rules regarding evaluation of treating physician opinions, such changes apply to claims filed after March 27, 2017, and do not apply to claims filed prior to that date. *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5852-53, 2017 WL 168819. Plaintiff filed her claim in March 2014 and thus the previous regulations apply.

for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

The ALJ addressed Dr. Lautzenheiser's opinions and provided the required good reasons for granting each only partial weight.

### April 2014 Opinion

First, with regard to Dr. Lautzenheiser's April 2014 opinion, the ALJ noted the limitation to two hours of standing and walking was inconsistent with the physician's own treatment notes, which showed normal gait, and infrequent instances of hip pain. This reasoning is supported by the record. Most records from October 2013 through April 2014 showed normal gait and posture. *See* Tr. 473 (October 2013 – normal gait and posture, full strength in lower extremities); Tr. 483

(March 2014 – normal gait and posture); Tr. 486 (April 2014 – normal gait and posture); Tr. 489 (April 2014 – normal gait and posture). There were only occasional instances of hip pain noted. *See* Tr. 476 (October 2013 – pain with abduction of both hips); Tr. 478 (February 2014 – normal gait and posture, but complaints of hip pain); Tr. 494 (April 2014 – normal gait and posture, walked without assistance or a cane, but noting painful abduction and adduction of both hips pre-surgery). Inconsistency between a physician's own treatment notes and his opinion is a valid reason to discount a treating physician's opinion. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015); *see also* 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3). The ALJ's determination that these records were inconsistent with Dr. Lautzenheiser's opinion that Plaintiff could only: stand or walk for two hours and sit for four in an eight-hour day; need to get up and move around every hour in 15 minute intervals, need for unscheduled breaks every hours; need for more than three absences per month; and inability to perform postural movements such as bending, stooping, and kneeling is thus supported by substantial evidence. The ALJ also noted inconsistencies in Dr. Lautzenheiser's lifting restrictions, such as his finding that Plaintiff could frequently lift five to ten pounds, but only occasionally carry that amount. *See* Tr. 20 (citing Tr. 329). In conclusion, the ALJ noted Dr. Lautzenheiser's April 2014 opinion "predates the claimant's hip replacement surgeries and therefore, is not wholly probative of her longitudinal functioning." (Tr. 20). As the ALJ discussed directly below in his analysis of Dr. Lautzenheiser's June 2016 opinion, *id.*, (as well as throughout his opinion, *see* Tr. 16-24), the records reflected Plaintiff's hip pain resolved post-surgeries. *See* Tr. 20. This is discussed in greater detail below, and is also a valid reason to discount the opinion.

### June 2016 Opinion

The ALJ provided similar good reasons to discount Dr. Lautzenheiser's June 2016 opinion.

16

He again pointed to the inconsistency between Dr. Lautzenheiser's assessment of Plaintiff's ability to stand, walk, and sit with contemporaneous treatment notes showing normal gait and posture from June 2014 through July 2016. (Tr. 20). This is supported by the records cited from Dr. Lautzenheiser's office which all show normal gait and posture, with the exception of two that reflect normal gait only. *See* Tr. 498, 506-07, 710, 805, 809, 839, 845, 849, 1086, 1089 (normal gait and posture); *see also* Tr. 836, 1082 (normal gait).

Further, the ALJ noted the "postoperative resolution of [Plaintiff's] hip pain appeared disproportionate to Dr. Lautzenheiser's assessment that the claimant's need to get up and move around increased to every hour for 15 to 30 minutes and need for unscheduled breaks increased to every hour for 15 to 30 minutes[.]" (Tr. 20). As the ALJ discussed elsewhere in his opinion, the records following Plaintiff's hip surgeries demonstrated resolution of her pain. *See* Tr. 17. This is supported by Dr. Schniegenberg's repeated notes Plaintiff was doing well after surgery without lingering pain. *See, e.g.,* Tr. 463 (six weeks post-op of left hip replacement Plaintiff was "doing extremely well", was not using a walker or crutches, and was "ambulating well"); Tr. 461 (three months post-op of left hip replacement Plaintiff was doing "extremely well", "ambulating well without any ambulatory aid" and had "no pain and no discomfort"); Tr. 770 (two week post-op visit of right hip replacement Plaintiff was "doing extremely well" , "doing better than she did the last time", "ambulating well" with a cane, and was not taking pain medication due to lack of pain). Moreover, as the ALJ cited, Dr. Lautzenheiser's own contemporaneous examination of Plaintiff's hips in June 2016 revealed no abnormalities. *See* Tr. 17; *see also* Tr. 1086 ("no tenderness to palpation, no pain, no swelling, edema or erythema of surrounding tissue, normal strength and tone, normal range of motion, no crepitus, no instability, subluxation or laxity, no known fractures or dislocations and normal sensation and coordination"). Consistency with the record as a whole

is a valid reason to discount an opinion. *See* 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4).

Finally, the ALJ cited Plaintiff's "discontinuation of physical therapy, and history of routine office visits" as inconsistent with Dr. Lautzenheiser's report that Plaintiff would likely be absent two to three times per month. This is another good reason for supporting the ALJ's decision to discount the opinion. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir 2015) (conservative treatment a valid reason to discount physician opinion); *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) ("[T]he ALJ reasonably viewed Francis's limited treatment as inconsistent with Dr. Wakham's opinion. While Francis has been no stranger to a doctor's office, all of his recent treatments were conservative and largely confined to pain medications."); see *also* 20 C.F.R 404.1627(c)(2)(ii), 416.927(c)(2)(ii) ("We will look at the treatment the source has provided . . . .").

Accordingly, the undersigned finds the ALJ provided the required good reasons for the weight assigned to Dr. Lautzenheiser's opinions. And, although Plaintiff can point to evidence suggesting a contrary conclusion, this Court must affirm even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. It does so here.

*Consultative Physician Dr. Onamusi's Opinion*

Plaintiff further argues the ALJ erred in rejecting consultative examining physician Dr. Onamusi's opinion, contending it was consistent with his contemporaneous findings. The undersigned disagrees.

The ALJ assigned Dr. Onamusi's opinion "little weight" because the opinion was "not consistent with the record as a whole" and his examination findings "were not probative of the claimant's longitudinal functioning." (Tr. 21). Similar to his reasoning regarding Dr.

18

Lautzenheiser's opinion, the ALJ cited normal gait and posture in examinations pre-dating Plaintiff's hip replacement surgery and post-surgery resolution of hip pain as inconsistent with Dr. Onamusi's sedentary exertion opinion. *Id.* Notably, Dr. Onamusi's examination occurred two months after Plaintiff's left hip replacement, and prior to her right hip replacement. For the same reasons discussed above in relation to Dr. Lautzenheiser's opinion, the undersigned finds the ALJ's determination regarding Dr. Onamusi's opinion supported by substantial evidence.

*State Agency Physician Opinions*

Plaintiff also argues the ALJ erred in relying on outdated state agency physician opinions. The undersigned disagrees.

The ALJ considered the opinions from the state agency physicians (offered in July and October 2014, *see* Tr. 66-67, 91-92), and assigned them partial weight. (Tr. 19). His reasons for doing so are supported by substantial evidence. He found that the "light work restriction is consistent with the evidence as a whole, particularly with respect to the claimant's preserved gait and posture as well as restoration of bilateral hip range of motion with hip pain resolution postoperatively." *Id.* He explained that he rejected the physicians' designation of "spine disorders" as a severe impairment (a finding Plaintiff does not challenge), and assigned further limitations based on evidence received after the opinions were issued. *Id.*

An ALJ may rely on a medical opinion offered from physicians who have not reviewed the entire record so long as the ALJ considers the post-dated evidence in formulating his opinion. *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (indicating that an ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence developed post-dating those opinions); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("[W]e require some indication that the ALJ at least

considered [the subsequent medical records] before giving greater weight to an opinion that is not

based on a review of a complete case record." (internal citations and quotation marks omitted)).

Here, the ALJ thoroughly examined the post-dated evidence as required. *See* Tr. 16-21.

Moreover, the RFC determination is the province of the ALJ, not of a particular physician.

*See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157

(6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a

physician."); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt

all of the opinions expressed in a medical source statement, a medical source statement must not

be equated with the administrative finding known as the [RFC] assessment."). As the Sixth Circuit

explained:

> But "the *ALJ* is charged with the responsibility of determining the RFC based on
> *her* evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc.*
> *Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (emphasis added). An RFC is an
> "administrative finding," and the final responsibility for determining an
> individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183,
> at * 1–2 (July, 2, 1996). "[T]o require the ALJ to base her RFC on a physician's
> opinion, would, in effect, confer upon the treating source the authority to make the
> determination or decision about whether an individual is under a disability." *Rudd*,
> 531 F. App'x at 728.

*Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017); *see also Mokbel-*

*Aljahmi v. Comm'r*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the

argument that a residual functional capacity determination cannot be supported by substantial

evidence unless a physician offers an opinion consistent with that of the ALJ. . . . We similarly

find no error here. The ALJ undertook a laborious evaluation of the medical record when

determining the residual functional capacity, and substantial evidence supports the ALJ's

conclusions.") (rejecting the argument that "once the ALJ decided to give no weight to the

physicians' opinions regarding his ability to work, the ALJ was required to get the opinion of another physician before setting the residual functional capacity").

For these reasons, the undersigned finds no error in the ALJ's consideration of any medical opinion evidence, and the RFC supported by substantial evidence.

Credibility / Subjective Symptom Reports[3]

Plaintiff secondly contends the ALJ failed to provide supported reasons for discounting Plaintiff's statements about the limiting effects of her impairments. The Commissioner responds that the ALJ's credibility / subjective symptom analysis was properly supported and should be affirmed. For the reasons discussed below, the undersigned finds no error.

The relevant Social Security regulations make clear that a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

---

3. Social Security Regulations previously used the term "credibility" for evaluating a Plaintiff's subjective report of symptoms. *See* SSR 96-7p, 1996 WL 374186. In March 2016, the Social Security Administration issued new Social Security Ruling 16-3p, which eliminated "'the use of the word 'credibility' . . . to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (quoting SSR 16-3p, 2016 WL 1119029, at *1). Both SSR 96-7p and SSR 16-3p direct the ALJ to evaluate an individual's subjective report of symptoms with the factors listed in 20 C.F.R. § 404.1529. SSR 16-3p, 2016 2017 WL 5180304, at *7-8; 1996 WL 374186, at *2. Thus, while the term "credibility" was eliminated, prior case law is still applicable. *See Pettigrew v. Berryhill*, 2018 WL 3104229, at *14 n.14 (N.D. Ohio) ("While the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96–7p has been invalidated by SSR 16–3p."), *report and recommendation adopted by* 2018 WL 3093696.

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. In determining whether a claimant has disabling symptoms, the regulations require an ALJ to consider certain factors including: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain, 6) any measures used to relieve pain, and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 419.929(c)(3)."). Although the ALJ must "consider" the listed factors, there is no requirement that the ALJ discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800-01 (6th Cir. 2004) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully supported, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted). The Court is thus limited to determining whether the ALJ's reasons are supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]").

Here, the ALJ appropriately explained the two-step process for evaluating symptoms. (Tr. 15-16) (citing 20 C.F.R. §§ 404.1529, 416.929, SSR 96-4p). He summarized Plaintiff's testimony:

> The claimant alleged disability due in part to hip problems (Ex. 3E, 2). In relevant part, the claimant submitted that her conditions affect her ability to lift, walk, bend, stand, and kneel (Ex. 4E). At the hearing, the claimant testified that she is limited to walking for five minutes and standing for about 30 minutes if she has something to lean on. She reported an inability to bend and lift more than five pounds. The claimant stated that she would drop objects prior to her carpal tunnel surgery but has since experienced improvement. Overall, the claimant submitted that her conditions cause her to remain in bed about three days per month.

(Tr. 16). Next he followed the two-step process. First, he determined Plaintiff's "medically determinable impairment(s) could reasonably be expected to produce the above alleged symptoms." (Tr. 16). Next, he stated:

> [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these

23

> statements have been found to affect the claimant's ability to work only to the
> extent they can reasonably be accepted as consistent with the objective medical and
> other evidence.

*Id.* A review of the decision demonstrates the ALJ provided several reasons for this finding.

Contrary to Plaintiff's assertion, the ALJ appropriately considered whether Plaintiff's statements

regarding her symptoms were consistent with other evidence, including objective medical

evidence.

      Throughout the opinion, the ALJ cited specific, legitimate, reasons for discounting

Plaintiff's subjective statements. Regarding Plaintiff's hip impairment limitations, the ALJ noted

inconsistencies between her statements and the evidence of record. *See* Tr. 17 ("The claimant's

positive response to treatment does not support her alleged restriction to walking for five minutes

and standing for 30 minutes."); *id*. ("The claimant's postoperative course further suggested that

her ambulatory difficulties and pain symptoms are not as severe as alleged."); *id*. ("[T]he evidence

did not reflect the severity of postural defects alleged. The claimant submitted that she cannot bend

or kneel (Ex. 4E, 6). However, the clinical exams suggest otherwise."); *id.* ("Essentially, the

episodic gait abnormalities prior to her hip replacements and demonstrable postoperative

improvement reflect a far greater physical capacity than alleged."). Regarding alleged

manipulative limitations, the ALJ similarly noted inconsistencies between Plaintiff's statements

and the records. *See* Tr. 18 ("[T]he evidence does not support the claimant's testimony that objects

would fall from her hands while lifting prior to undergoing carpal tunnel releases."); Tr. 19 ("Given

the claimant's admitted improvement, recency of treatment despite a 10-year history of symptoms,

and preserved motor functioning throughout the period at issue, the undersigned determined that

the claimant has the above detailed manipulative limitations.").

      The ALJ thus provided several reasons to discount Plaintiff's subjective symptom reports:

24

1) inconsistency with the objective evidence; 2) effectiveness of treatment; 3) ability to work in the past with carpal tunnel syndrome; and 4) discrepancies in her statements to the ALJ and to medical providers.

Although Plaintiff is correct that an ALJ may not reject subjective symptom statements *solely* because objective medical evidence does not support them, *see* SSR 16-3p, 2017 WL 5180304, at *5, it is an appropriate factor to consider in assessing the severity of such symptoms. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506-07 (6th Cir. 2013) ("The ALJ also appropriately based its credibility determination on the clinical findings, which were inconsistent with total disability and indicated that Johnson's condition during the relevant time period was not rapidly deteriorating."); SSR 16-3p, 2017 WL 5180304, at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.").

The ALJ considered that Plaintiff's hip impairment improved after her surgeries, and that she stopped physical therapy and did not return to Dr. Schniegenberg after April 2015 for hip problems. (Tr. 17). This is a proper consideration. *See* 20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c) (3)(v) ("[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms"); *see also* SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of an individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Next, the ALJ rejected Plaintiff's subjective complaints of manipulative limitations because she had worked with this impairment in the past, and had performed a job involving

25

manipulative activities. *See* Tr. 18. This is a valid reason to discount Plaintiff's allegations regarding the severity of her hand limitations. *See Bowen v. Soc. Sec. Admin.*, 581 F. App'x 544, 545 (6th Cir. 2014) ("Given that Bowen performed light or medium work until the alleged onset date of disability and that there is no credible medical evidence or testimony showing that she subsequently developed limitations precluding light work, substantial evidence supported the ALJ's RFC determination."); *see also Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 596 (6th Cir. 1987) (finding that blindness in one eye had "little effect on the disability determination" given the claimant's ability to work with the impairment previously). The ALJ also noted contrary evidence in the record, including the consultative examiner's findings that Plaintiff was able to perform manipulative tasks. (Tr. 18) (citing Tr. 455). And, the ALJ cited the "recency of treatment despite a 10-year history of symptoms". (Tr. 19). As noted above, if the treatment sought is not proportional to subjective allegations, subjective symptom statements may be discounted. *See* SSR 16-3p, 2017 WL 5180304, at *9.

Finally, the ALJ pointed to inconsistencies between statements Plaintiff made at the hearing and statements she made to her physicians regarding worsening symptoms with cold weather and ability to sleep. (Tr. 19). He also noted: "the absence of pain management intervention and exam findings detailed above sharply contrasted with the claimant's testimony that she remains in bed three days per month due to her symptoms." *Id.* Such inconsistent statements are also a valid reason to discount a claimant's subjective symptom statements. *See* SSR 16-3p, 2017 WL 5180304, at *5-9.

Plaintiff also contends her "exemplary work history is not consistent with an individual who is exaggerating or has no desire to work." (Doc. 8, at 21). But as the Sixth Circuit explained in addressing a similar argument, an ALJ "[is] not required to explicitly discuss [a claimant]'s

26

work history when assessing his credibility" when the ALJ provides other substantially supported reasons to justify his analysis of a claimant's subjective symptoms. *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (rejecting argument that "the ALJ erred by failing to consider his consistent and arduous work history when evaluating his credibility").

For the reasons discussed above, the undersigned finds the ALJ's subjective symptom evaluation supported by substantial evidence.

<u>Appointments Clause</u>

In a supplemental letter filed after her Reply brief, Plaintiff argues that the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), also requires remand in this case. (Doc. 12). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. *Id.* at 2055. The Court however, made clear that, with respect to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. *Id.* (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)). There, the challenge was timely presented to the Securities and Exchange Commission. *Id.* Other courts to address this claim have held that, to the extent *Lucia*'s holding applies to Social Security ALJs, plaintiffs forfeit the issue by failing to raise it during administrative proceedings. *See, e.g., Faulkner v. Comm'r of Soc. Sec.*, 2018 WL 6059403, at *2 (W.D. Tenn.); *Page v. Comm'r of Soc. Sec.,* 2018 WL 5668850, at *3 (E.D. Mich.); *Davidson v. Comm'r of Soc. Sec.*, 2018 WL 4680327, at *2 (M.D. Tenn.); *Garrison v. Berryhill*, 2018 WL 4924554, at *2 (W.D.N.C.); *Stearns v. Berryhill*, 2018 WL 4380984, at *5 (N.D. Iowa); *Trejo v. Berryhill*, 2018 WL 3602380, at *3 n.3 (C.D. Cal.). Plaintiff argues, based on *Sims v. Apfel*, 530 U.S. 103 (2000), that "ordinary rules of waiver do not apply in Social Security proceedings and objections to an Agency decision can be made on any ground for the first time in the District Court." (Doc. 12, at 1) (citing *Sims*, 530

27

U.S. at 110-11). But *Sims* held that a claimant need not exhaust issues before the Appeals Council in order to raise them on judicial review. 530 U.S. at 112 ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."). It did not address whether an issue had to be raised earlier before an ALJ to be preserved for judicial review. *See also Stearns*, 2018 WL 4380984, at *5 (rejecting argument that *Sims* means a claimant can raise a challenge based on *Lucia* despite not raising it before the ALJ); *see also Iwan v. Comm'r of Soc. Sec.*, 2018 WL 4295202 at *9 (N.D. Iowa) ("*Sims* concerned only whether a claimant must present all relevant issues to the Appeals Council to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.") (internal citation omitted).

Plaintiff admits she did not make an Appointments Clause challenge during the administrative proceedings. *See* Doc. 12, at 1. Thus, she forfeited the issue and may not now raise it. The undersigned agrees with the reasoning in the above-cited cases and finds *Lucia* does not compel remand  here.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).