# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Mary Wreede,                                                              Case No. 3:18CV164

            Plaintiff

            v.                                                **ORDER**

Commissioner of Social Security,

            Defendant

      This is a Social Security appeal. Plaintiff Mary Wreede appeals the Commissioner's decision denying her application for disability benefits.

      An administrative law judge rejected Wreede's claim that she is disabled. In her application, Wreede claimed that a number of impairments – relevant here, osteoarthritis in her left and right hips, carpal tunnel syndrome, and back pain – rendered her disabled. Wreede had surgery replacing both hips (her left on May 8, 2014 and her right on October 21, 2014) to address her osteoarthritis. (Doc. 7 at 382-84, 790-91). She had carpal tunnel release surgery on each wrist (the left on May 2, 2016 and the right on May 26, 2016) to remedy her carpal tunnel syndrome. (*Id.* at 920, 1085).

      The ALJ determined that Wreede's osteoarthritis and carpal tunnel syndrome are severe impairments. He found, however, that her back pain is a non-medically determinable impairment. The ALJ concluded that Wreede's impairments do not "meet[] or medically equal[] the severity of" a listed impairment. (Doc. 7 at 20).

Accordingly, the ALJ determined that Wreede has the residual functional capacity (RFC) to perform light work "with the following postural limitations: occasionally climbing ramps and stairs; occasionally climbing ladders, ropes, or scaffolds, frequently balancing and stooping; occasionally kneeling crouching, and crawling." (*Id.*). The ALJ further identified "the following manipulative limitations: handling and fingering frequently bilaterally." (*Id.*). He concluded that, within this RFC, Wreede can perform her "past relevant work as a production assembler and vending machine attendant." (*Id.* at 26).

Pending is Magistrate Judge James R. Knepp's Report and Recommendation, which recommends that I affirm the denial of benefits. (Doc. 14). Wreede has filed objections. (Doc. 15).

On de novo review of the R&R, *see* 28 U.S.C. § 636(b)(1), I overrule the objections, adopt the R&R, and affirm the Commissioner's decision.

## Discussion

Wreede argues that the ALJ incorrectly evaluated medical opinion evidence she supplied and testimony she gave at her disability hearing.

### I. Medical Opinion Evidence

Wreede contends that the ALJ improperly gave (1) partial, rather than controlling, weight to her treating physician's opinions, (2) little weight to a consultative examiner's opinion, and (3) partial weight to two agency-appointed reviewing physicians' opinions.

### A. Treating Physician Opinions

"Treating-source opinions must be given controlling weight if two conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case

2

record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating-source opinion does not meet one or both of these conditions, the ALJ may assign it less than controlling weight. *See, e.g.*, *Brogan v. Comm'r of Soc. Sec.*, 2017 WL 1032520 (N.D. Ohio) (Carr, J.) (holding that physician's opinion's conflict with record evidence warranted assigning less than controlling weight).

The Commissioner must provide "good reasons for discounting the weight given to a treating-source opinion," and these reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, *supra*, 710 F.3d at 376.

**1. The April 29, 2014 Multiple Impairment Questionnaire**

Wreede generally protests the ALJ's decision to assign her treating physician's April 29, 2014 opinion partial weight but does not argue that the ALJ failed to provide good reasons for doing so. (*See* Doc. 15 at 2). I agree with the Magistrate Judge that substantial evidence supports the ALJ's decision to discount treating physician Dr. Lautzenheiser's first opinion.

Dr. Lautzenheiser's first opinion concluded that Wreede's osteoarthritis in her hips precluded her from: sitting more than four hours or standing and walking more than two hours in an eight-hour workday; standing or walking continuously; and kneeling, bending, and stooping. (Doc. 7 at 333, 537). Dr. Lautzenheiser further opined that Wreede could frequently lift up to ten pounds, occasionally lift ten to twenty pounds, and occasionally carry up to twenty pounds. (Doc. 7 at 534). He also determined that Wreede would need ten- to fifteen-minute breaks each hour. (Doc. 7 at 536).

The ALJ first noted that the April 29, 2014 opinion conflicted with Dr. Lautzenheiser's treatment notes from the same time period. Conflict between a treating physician's opinion and record medical evidence, including the treating physician's contemporaneous treatment notes, is good reason to discredit the opinion. *See Lester v. Soc. Sec. Admin.*, 596 Fed. App'x 387, 389 (6th Cir. 2015); *see also* 20 C.F.R. § 404.1527(c)(3)-(4) (explaining the commissioner will weigh a medical opinion's consistency with the record when assigning weight).

Dr. Lautzenheiser's treatment notes indicate that he saw Wreede seven times from October, 2013 through April 29, 2014. Wreede reported hip pain during only three of those appointments, and Dr. Lautzenheiser noted that Wreede showed a normal gait at each appointment. (*See* Doc. 7 at 477-501).

The Sixth Circuit in *Shepard v. Commissioner of Social Security*, 705 Fed. App'x 435, 440 (6th Cir. 2017) held that an ALJ properly discredited a treating source's opinion that the claimant could not perform light or sedentary work where the claimant had a consistently normal gait and managed her pain with medication. I likewise find that the restrictions Dr. Lautzenheiser recommended in his first opinion are inconsistent with Wreede's symptoms as documented in the contemporaneous treatment notes. This inconsistency is good reason to discount Dr. Lautzenheiser's April 29, 2014 opinion.

The ALJ next explained that Dr. Lautzenheiser's first opinion was internally inconsistent. Indeed, the ALJ noted, Dr. Lautzenheiser concluded that although Wreede could lift up to ten pounds frequently, she could carry that same amount only occasionally. (Doc. 7 at 25, 534). This unexplained discrepancy, too, is good reason to discount the opinion.

Finally, the April 29, 2014 opinion precedes Wreede's May 8, 2014 and October 21, 2014 hip replacement surgeries. Accordingly, the April 29, 2014 opinion captures only Wreede's

pre-surgery condition but not her post-surgery improvements. I agree with the ALJ that this failure to capture a longitudinal picture of Wreede's capabilities is also good reason to give the opinion partial weight. (Doc. 7 at 25). *See* 20 C.F.R. § 404.1527(c)(2) (explaining reasoning for giving treating sources controlling weight).

The reasons the ALJ identified provide substantial evidence to support his decision to give the April 29, 2014 opinion partial weight.

## 2. The June 27, 2016 Disability Impairment Questionnaire

Wreede likewise does not claim that the ALJ failed to support his decision to discount Dr. Lautzenheiser's June 27, 2016 opinion but complains that the ALJ focused solely on Wreede's hip condition in so doing. (Doc. 15 at 2 (citing 20 C.F.R. §§ 404.1523(c), 416.923(c))). I agree with the Magistrate Judge that substantial evidence supports the ALJ's decision to give Dr. Lautzenheiser's second opinion partial weight.

I note, initially, that Wreede's argument conflates two directives in the Social Security regulations. An ALJ must "consider the combined effect of all of [a claimant's] impairments" when making a disability determination. 20 C.F.R. §§ 404.1523(c), 416.923(c). The regulations do not, however, require the ALJ to conduct a condition-by-condition analysis when evaluating a treating source opinion; the ALJ simply must articulate "good reasons" to discredit such an opinion. *Id.* at § 404.1527(c)(2).

Moreover, the ALJ did consider each of Wreede's impairments when he reached his disability determination, and he provided good reasons to give Dr. Lautzenheiser's second opinion partial weight.

The June 27, 2016 opinion explained that Wreede suffered from "Low Back Pain, Bilateral Hip Pain," and "Bilateral Wrist Pain." (Doc. 7 at 928). Dr. Lautzenheiser concluded

that these conditions prevented Wreede from "walking greater than 1 block" and "sitting on hard surfaces." (*Id.* at 929-30). He therefore restricted Wreede to sitting, standing, and walking for three hours out of an eight-hour day, lifting and carrying up to ten pounds frequently, and lifting and carrying ten to twenty pounds occasionally. (*Id.* at 929-30). Dr. Lautzenheiser also determined that Wreede's pain would frequently interfere with her concentration, that she would need fifteen- to thirty-minute breaks each hour, and that she would miss work two to three times per month. (*Id.* at 930-32).

Though the ALJ did not expressly address Wreede's back pain and carpal tunnel syndrome in weighing Dr. Lautzenheiser's second opinion, he did address Wreede's carpal tunnel syndrome in concluding his opinion evidence evaluation:

> As for her hands, the claimant had grossly intact functioning preoperatively and endorsed significant improvement after her carpal tunnel releases. Although a treating source opined that the claimant has greater restrictions than those [the ALJ deemed necessary], these assessments were largely inconsistent with the corresponding treatment notes. For these reasons, the undersigned finds that the claimant has the above detailed residual functional capacity.

(Doc. 7 at 26).

Also, before weighing the opinion evidence, the ALJ discussed Wreede's back pain and carpal tunnel syndrome at length. (*Id.* at 22-24). In so doing, the ALJ identified inconsistencies between the record evidence and the recommended restrictions. *See Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 474-75 (6th Cir. 2016) (finding ALJ provided good reason to discount treating source opinion when referring to conflicting objective evidence "as discussed above" in the ALJ's opinion).

First, the ALJ weighed evidence about Wreede's back condition, noting that "[s]pinal assessments" in the case record "varied but did not show preclusion of motion." (*Id.* at 22, 457 (manual muscle test results), 910 (treating orthopedist notes), 986, 1013 (physical therapy

notes)). Moreover, the ALJ explained, Wreede's "lumbar flexion remained within functional limits during a physical therapy course from June 24, 2016 through July 28, 2016." (*Id.* at 23, 1110-16 (physical therapy notes)). The ALJ also explained that an x-ray and MRI on Wreede's lumbar spine were normal. (*Id.* at 19 (citing *id.* at 453-54 (x-ray results), 996-97 (MRI results))).

Next, the ALJ examined records related to Wreede's carpal tunnel syndrome. He cited record evidence showing that Wreede could grip, grasp, and perform manipulative tasks with her hands both before and after her carpal tunnel release surgeries. (*Id.* at 24, 460 (consultative examiner's report)). He also noted that the carpal tunnel release surgeries alleviated Wreede's pain and numbness and did not require physical therapy. (*Id.* at 24, 900 (progress treatment notes)). Finally, he explained that, while Wreede had "residual soreness at the right hand," she had no such symptoms in her "dominant left hand." (*Id.* at 24 (summarizing Wreede's testimony)).

Likewise, in evaluating Dr. Lautzenheiser's second opinion, the ALJ identified record evidence about Wreede's osteoarthritis that departed from the recommended restrictions. Specifically, the ALJ noted that Dr. Lautzenheiser's treatment notes from June, 2014 through July 1, 2016, consistently showed normal gait and posture. (Doc. 7 at 25, 503, 511-12, 715, 810, 814, 850, 854, 1087, 1091, 1094 (treatment notes)). Moreover, Wreede reported "postoperative resolution of hip pain," which, the ALJ explained, conflicted with the restrictions Dr. Lautzenheiser identified. (Doc. 7 at 25, 466 (Wreede reports "no pain and no discomfort" three months after her left hip replacement), 775 (Wreede reports "no pain" at an appointment two weeks after her right hip replacement and that "[s]he got rid of her pain medicine . . and said she is not even using it.")). Finally, the ALJ explained that Wreede's "discontinuation of physical

therapy, and history of routine office visits" conflicted with her apparent need to miss work two to three times per month. (Doc. 7 at 25).

The ALJ, therefore, identified record evidence about Wreede's back pain, carpal tunnel syndrome, and osteoarthritis that conflicted with the restrictions Dr. Lautzenheiser identified. Such inconsistency is good reason to discount his opinion. *See Lester*, *supra*, 596 Fed. App'x at 389. Accordingly, substantial evidence supports the ALJ's decision to give Dr. Lautzenheiser's second opinion partial weight.

### B. Consultative and Reviewing Physician Opinions

An ALJ has discretion to weigh a non-treating physician's opinion considering: (1) the examining relationship, (2) the treatment relationship, (3) the opinion's supportability, (4) the opinion's consistency "with the record as a whole," (5) the physician's specialty, and (6) "[o]ther factors . . . which tend to support or contradict the medical opinion." *See* 20 C.F.R. § 404.1527(c) (1)-(6).

### 1. The Consultative Examiner's Opinion

Wreede complains that the ALJ improperly focused on her hip problems when he assigned consultative examiner Dr. Onamusi's opinion little weight. I disagree.

"[R]eports of individual examinations, such as consultative examinations," 20 C.F.R. § 404.1527(c)(2), garner "if anything, less deference than the treating physician's opinion." *Grisier v. Comm'r of Soc. Sec.*, 721 Fed. App'x 473, 477 (6th Cir. 2018) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.2d 469, 477 (6th Cir. 2003)).

Dr. Onamusi, who examined Wreede once, concluded that she could perform sedentary work. (Doc. 7 at 459-61). The ALJ articulated several reasons supporting his decision to give Dr. Onamusi's opinion little weight.

First, Dr. Onamusi's opinion, dated July 10, 2014, followed Wreede's left hip replacement surgery but preceded her right hip replacement surgery. Accordingly, as the ALJ explained, the opinion does not capture Wreede's longitudinal functioning. (Doc. 7 at 26).

Next, the ALJ pointed to record evidence, like that he identified in his evaluation of Dr. Lautzenheiser's opinions, that conflicted with a sedentary restriction. This evidence included medical records, described above, showing Wreede's consistently normal gait and her manipulative capabilities. The ALJ also noted that Wreede's back condition did not support Dr. Onamusi's opinion because the evidence in the record indicated that condition is not a "medically determinable impairment." (Doc. 7 at 26 (citing *id.* at 19-20 (contrasting claimed restrictions due to Wreede's back pain with record evidence)).

Wreede's argument that the ALJ focused exclusively on her hip problems is unfounded, and the ALJ identified inconsistencies between Dr. Onamusi's opinion and the record evidence. Accordingly, substantial evidence supports the ALJ's evaluation of that opinion.

### 2. The Reviewing Physicians' Opinions

Wreede complains that the ALJ's gave reviewing physicians Drs. Lewis and Delphia's opinions "more weight . . . than those from treating and examining sources." (Doc. 15 at 7-8).

Wreede mischaracterizes the ALJ's evaluations. The ALJ gave the reviewing physicians' opinions the same weight he gave Dr. Lautzenheiser's opinions. (Doc. 7 at 24). I agree with the Magistrate Judge that substantial evidence supports this determination.

The reviewing physicians concluded that Wreede could perform light work. As with the consultative examiner's opinion, the ALJ had discretion to weigh the reviewing physicians' opinions. *See* 20 C.F.R. § 404.1527(c). And, indeed, the ALJ assessed the reviewing physicians' opinions in light of their consistency with the record evidence. Specifically, the ALJ explained

that the reviewing physicians' conclusions were consistent with the record evidence showing Wreede's "restor[ed] bilateral hip range of motion," her pain relief following her hip replacement surgeries, and her consistently normal gait. (Doc. 7 at 24).

The ALJ noted, however, that the reviewing physicians "are non-treating, non-examining sources who did not have the opportunity to consider the entire record." (Doc. 7 at 24). Indeed, Dr. Lewis gave his opinion on July 18, 2014 (*id.* at 72), and Dr. Delphia gave his opinion on October 15, 2014 (*id.* at 97). The reviewing physicians' opinions, then, followed Wreede's left hip replacement but preceded her right hip replacement and her carpal tunnel release surgeries. Accordingly, like Dr. Lautzenheiser's first opinion and Dr. Onamusi's opinion, the ALJ properly discounted the reviewing physicians' opinions because they do not capture Wreede's longitudinal functioning. (*See id.* at 24). *See* 20 C.F.R. § 404.1527(c)(2).

The ALJ also contrasted the reviewing physicians' opinions with record evidence of Wreede's back condition. He properly discredited their opinions insofar as they conflicted with the "normal lumbar imaging studies" in the record. (*Id.* at 19, 24 (citing normal MRI and x-ray results)).

Accordingly, substantial evidence supports the ALJ's decision to give the reviewing physicians' opinions partial weight.

## II. Wreede's Testimony

Wreede also argues that the ALJ improperly assessed her credibility when evaluating her testimony about her symptoms. (*See* Doc. 15 at 8). I disagree.

The Sixth Circuit has prescribed a two-part test for weighing a claimant's testimony about the effects of his or her pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical

> evidence confirms the severity of the alleged pain arising from the condition; or
> (2) whether the objectively established medical condition is of such a severity that
> it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 721 F.3d 525, 531 (6th Cir. 1997); *see also Jones*, *supra*, 336 F.3d at 476 (citing *id.*). Indeed, an ALJ's "credibility findings may not be disturbed absent a 'compelling reason.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x 508, 511 (6th Cir. 2013) (explaining such determinations are "virtually unchallengeable").

Wreede testified that she can walk for five minutes and stand for thirty minutes "if she has something to lean on," cannot bend or lift more than five pounds, and her carpal tunnel syndrome caused her to drop items (though this improved with surgery). (Doc. 7 at 21). She also stated she remained bedridden from pain three days per month. (*Id.*).

The ALJ weighed Wreede's testimony using the Sixth Circuit's two-part test. (Doc. 7 at 21). At the second step, the ALJ determined that Wreede's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*).

Specifically, the ALJ contrasted Wreede's testimony about her ability to stand, walk, lift, and bend with record evidence showing that Wreede (1) could stand and walk before and after her hip replacement surgeries, (2) had normal gait and posture before and after her surgeries, and (3) stopped post-hip surgery physical therapy before the end of the prescribed period (Doc. 7 at 974, 982 (Wreede canceled her final therapy appointment without rescheduling)).

The ALJ also identified evidence contradicting Wreede's testimony about her carpal tunnel syndrome. Specifically, the ALJ cited medical records showing that Wreede, before her

11

carpal tunnel surgery, could "grip and grasp with both hands [and] use her hands for fine coordination and manipulative tasks." (Doc. 7 at 23, 460 (consultative examiner's notes)). He also identified medical records showing that Wreede's carpal tunnel syndrome caused "no local neuropathy, radiculopathy, plexopathy, or myopathy." (Doc. 7 at 23, 759 (treatment notes))). Finally, the ALJ noted that Wreede reported improved symptoms after her carpal tunnel surgery and that she did not need physical therapy after that surgery.

The ALJ also explained that, despite Wreede's testimony that "she was lucky to get" more than four hours of sleep in a night (Doc. 7 at 24), she reported on a physical therapy questionnaire that her pain did not interfere with her sleep (*id.* at 1016).

The ALJ identified substantial record evidence that conflicts with Wreede's testimony and considered each of Wreede's alleged impairments when evaluating her credibility. I therefore find no "compelling reason" to disturb the ALJ's credibility assessment.

**Conclusion**

It is, therefore

ORDERED THAT

1. Wreede's objections to the Magistrate Judge's Report and Recommendation (Doc. 15) be, and the same hereby are, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 14) be, and the same hereby is, adopted as the order of the court; and

3. The Commissioner's decision denying plaintiff's application for disability benefits be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge